## OOTHAUT vs. LEAHY.

*Evidence* — *Nonsuit.    Sale of goods* — *To whom made.*

Defendant's brothers, in New York city, wished to purchase goods of plaintiff there on credit, and proposed to give their note at four months with defendant's indorsement; and plaintiff agreed to these terms. Defendant, however, applied to plaintiff to change the arrangement, stating that he did not wish to indorse his brothers' note, because all his dealings were in cash, and proposing that plaintiff should deliver the goods to his brothers and take their note, and that he would call and pay the amount in cash, less the usual cash discount, and would take the note himself, but stating that he did not wish his brothers to know of the arrangement. Plaintiff assented, and delivered the goods to defendant's brothers, and took their note, made payable to *their own* order, and indorsed by them, the note being so drawn in order that it might be delivered to defendant without plaintiff's indorsement. An entry was made in the sales book as of a sale to defendant's brothers, showing the articles sold, with weights and prices, but not showing any *charge* against said brothers. Defendant did *not* call and pay the cash, and plaintiff's clerk wrote a note addressed to him at his brothers' place of business, requesting him to call "and indorse the note," making the request in that form so that if the letter fell into the hands of defendant's brothers, they would not be informed of the new arrangement. Plaintiff afterward requested defendant *either*

to pay the cash *or* indorse the note; and, subsequently, having notified defendant that he looked to him for payment, and requested him to remit, and he having neglected to do so, and requested plaintiff to call upon his brothers for payment, plaintiff presented the note to said brothers at maturity, and (payment not being made) notified defendant that it was unpaid. *Held*, that, upon evidence tending to establish these facts, it was for the jury to determine whether the goods were not sold on defendant's credit; and it was error to *nonsuit* the plaintiff.

APPEAL from the County Court of *Milwaukee* County.

Action for the value of goods sold and delivered by plaintiff to "Leahy Bros.," on the faith, as is alleged, of defendant's promise to pay for the same. The facts which the plaintiff's evidence tended to establish, will appear from the opinion. The plaintiff appealed from a judgment of nonsuit.

*Mann & Cotzhausen*, for appellant, as to the effect of the entry of the sale on plaintiff's books, cited Parsons on Con. 500 ; *Pecker v. Hoit*, 15 N. H. 143 ; *Croft v. Smallwood*, 1 Esp. 121; *Richardson v. Humphreys*, 1 Ala. 383; Browne on Frauds, § 199. To the point that it was for the jury to decide to whom the original credit was given, they cited further *Sinclair v. Richardson*, 12 Vt. 33; *Flanders v. Crolius*, 1 Duer, 206; *Quintard v. De Wolf*, 34 Barb. 97.

*Jenkins & Elliott*, for respondent, argued that where the *whole* credit is not given to the person who comes in to answer for another, or if any credit at all be given to the person receiving the goods, or if he remain liable in any respect to the seller, the promise is collateral, and within the statute. 1 Smith's L. C. (4th Am. ed.) 316, 325 ; 2 Term, 80 ; 1 Starkie's R. 270 ; 1 Salkeld, 27; 1 H. Blacks. 120 ; Cowp. 227 ; 1 Ld. Raymond, 224; 2 id. 1085; 6 Mod. 248; 12 id. 250; 3 C. & P. 130 (14 E. C. L. 238); 3 Doug. 13 and note C; 12 Vt. 125 ; 15 id. 422; 28 id. 771; 31 id. 631; 39 N. H. 259 ; 6 Pick. 509 ; 18 id. 369; 3 Allen, 540; 6 Rand. 509 ; 10 Leigh, 155; 11 Grat. 636; 1 McCord Law, 100 ; 4 Strob. Law, 431; 7 H. & J. 391; 1 Gill, 260; 4 Yerg. 563, 576 ; 4 Ala. 390;

8 Johns. 29; 13 Wend. 121; 1 E. D. Smith, 32; 1 Sandf. 514; 1 Duer, 199; 1 Hilt. 209; 1 Daly, 213; Breese, 79.  2. As to the effect of the entry of sale, they cited 1 Parsons on Con. 499; 2 Term, 80; 1 H. Blacks. 120; Cowp. 227; 12 Mod. 250; 3 C. & P. 130, and most of the other cases cited *supra.* 3. Counsel also insisted that it appeared from the plaintiff's evidence that the sole credit was not given to Leahy Bros., and that the promise of the defendant was in aid of their liability; and that it was for the court to determine upon a given state of facts, whether the promise of defendant was collateral; and the plaintiff was properly nonsuited.  2 Term, 80; Cowp. 227; 6 Mod. 246; 2 Ld. Raymond, 1085; 1 Smith's L. C. 316; 1 H. Blacks., 120; 3 C. & P. 130; 1 McC. 100, and other cases above cited.

PAINE, J.  It must be conceded that some of the circumstances exist in this case, upon the plaintiff's own showing, which have been often held  decisive to prove that the promise of the defendant was collateral, and not original.  But notwithstanding this, I think, upon the peculiar facts appearing in the evidence, they are so far  explained as to have  made it proper to submit to the jury the question whether the sale was not really to the defendant.

The brothers of the defendant, residing in New York, desired to purchase goods of the plaintiff on credit; and they offered their note at four months, with the defendant as indorser.  The plaintiff made inquiries, and learned that the brothers in New York were irresponsible, but that the defendant, who resided in Milwaukee, was responsible, and agreed to sell the goods on the terms proposed.  When the negotiation had reached this point, the defendant himself appeared at the plaintiff's store, and desired to change the arrangement.  He said he did not wish to indorse his brothers' note, because all his dealings were for cash; and he proposed to the plaintiff to deliver the goods

to his brothers, taking their note, and that he would call and pay in cash, less five per cent, the usual discount on cash sales, and would take the note himself. He said he did not desire his brothers to know of this arrangement, as he thought they might be more prompt if they supposed he was an indorser of their note. The plaintiff assented to this new arrangement, and delivered the goods in pursuance of it. He took the note of Leahy Brothers at four months, as the defendant requested, but did not have it drawn payable to his order, his name being stricken out of the blank used, and the note made payable to Leahy Brothers' own order, and indorsed by them. The note was so drawn, so that the plaintiff need not indorse it, on transferring it to the defendant. The defendant never called and paid the cash, as he had promised, nor took the note; and, after a series of ineffectual attempts to collect the money both of him and of Leahy Brothers, this suit was commenced.

Now, the circumstances relied on to show that this sale was to Leahy Brothers, and not to defendant, are the following: (1.) An entry in the sales book of the plaintiff indicating that the sale was to Leahy Brothers. But it will be observed that this entry does not show any charge against Leahy Brothers. It purports to be no more than an entry of the articles sold, with weights and prices. And under the circumstances it was no more than natural that such an entry should be made, inasmuch as the original application had been made in the name of Leahy Brothers, and the iron was delivered to their order. It is not by any means conclusive evidence that the credit was given to them, nor is it irreconcilable with the theory that the goods were delivered solely on the defendant's promise to sell and pay the cash. Such a mere memorandum of a sale, not purporting to charge any body, is not of the same weight as an entry showing a direct charge against a particular party as an item of account. (2.) The clerk of the plaintiff, after the

goods were delivered, wrote a note to the defendant, addressed to him at his brother's place of business, requesting him to call " and indorse Leahy Brothers' note;" and this is relied on to show that his agreement was to indorse, and not to pay cash. But the clerk testified that he made the request in that form so that if his letter fell into the hands of the defendant's brothers, they would not be informed of the arrangement, which the defendant desired to conceal from them. This explanation is certainly not unnatural or improbable; and if the jury should believe it, as they would have a right to, it would explain satisfactorily any apparent inconsistency between the form of this request and the statements of the witnesses as to what was the real agreement with the defendant. (3.) It appears, also, that the plaintiff tried to get the note paid by Leahy Brothers, and presented it for payment when due. But this was after a previous attempt to get the money from the defendant before the note became due, and it was in pursuance of a request from him that the plaintiff would call upon his brothers. This fact goes far to explain and avoid the effect of the other.

Counsel also laid some stress upon the fact that when plaintiff sent the note to Milwaukee, he requested the defendant either to pay the cash, on to indorse the note. But this, under the circumstances, was not unnatural. The plaintiff had originally agreed to take the defendant's indorsement. He had substituted a new arrangement at defendant's request. This new arrangement the defendant had not complied with. The plaintiff might reasonably have begun to suspect that something was wrong, and as a matter of policy have thought it best to put his request in the alternative, and give the defendant the option either to comply with the new or the original arrangement. The circumstance is entitled to but little weight. And all the circumstances relied on, taken together, are not sufficient to take from the jury the right of determining, upon

the whole evidence, whether the credit was not given solely to the defendant. The plaintiff's witnesses so swear. The fact that after an agreement for the defendant's indorsement, the goods were delivered without it; the fact that the note of Leahy Brothers was not made payable to the plaintiff; the fact that soon after that note was taken, and several months before it became due, the plaintiff applied to the defendant for the cash, and that the defendant promised, in a letter written by his clerk at his dictation, to remit the amount in case his brothers had not settled the account — would well warrant the jury in finding that the credit on this sale was given solely to the defendant. If the agreement was as the plaintiff's witnesses state, and as these facts tend so strongly to show, it is difficult to come to any other conclusion, notwithstanding all the circumstances urged against it. If the defendant promised to call and pay the cash for the goods, it is difficult to see how such a promise could be collateral to the promise of his brothers to pay four months afterward, or how the plaintiff could have given the credit to his brothers for four months when he was to have his pay down in cash if the defendant fulfilled his promise.

The case is peculiar, and while it presents several features that would ordinarily go far to show that the credit was not given to the defendant, yet on the whole evidence these features appear to have originated in the attempt to substitute the new arrangement at the defendant's request, although leaving his brothers to suppose that the original agreement had been carried out. There would seem to be nothing wrong on his part, as between him and his brothers, in that proceeding, and nothing wrong on the part of the plaintiff in acquiescing in it. But the defendant should not be allowed to rely on this innocent disguise which he gave to the transaction for his own purposes, to defeat the agreement which he made. If the jury say, upon the whole evidence, that the goods were sold and

delivered on the faith of the defendant's promise to pay down for them in cash, he should be held liable on it as an original agreement.

*By the Court.* — The judgment of nonsuit is reversed, and a *venire de novo* awarded.